E-filing

**Peter C. Clark**
1674 A Pleasant Hill Rd.,
Pleasant Hill, CA, 94523
(925) 954-8284
    In pro per

FILED

OCT - 4 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IFP
SDP
ADR

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| In Re<br>Peter Clark, Debtor<br><br><br>Peter Clark<br>    Plaintiff<br>       v.<br>Deutsche Bank National Trust Company,<br>The Honorable Bruce Mills | Case # 10-  **C10-04481** RS<br><br>**COMPLAINT**<br><br>**Jury Trial Required** |

Does 1-100
Defendants

Related Bankruptcy Case # 10-41422 EDJ

**FIRST CAUSE OF ACTION- FRAUD**                                            pg.33
**SECOND CAUSE OF ACTION – Declaration of Constructive Trust**           pg.34
**THIRD CAUSE OF ACTION– DECLARATORY JUDGMENT**             pg.36
**FOURTH CAUSE OF ACTION –  Violations of Due Process, Civil Rights,**
                   **and/or Federal Authority (Bankruptcy Act)**             pg.37
**FIFTH CAUSE OF ACTION –VIOLATIONS OF BUSINESS & PROFESSIONS CODE §17200**   pg.40
**SIXTH CAUSE OF ACTION - - INJUNCTIVE RELIEF- Ex parte Young**        pg.42
**SEVENTH CAUSE OF ACTION - RICO CLAIMS 18 U.S.C. § 1962 (d) -**         pg.43
**EIGHTH CAUSE OF ACTION - RICO CLAIMS 18 U.S.C. § 1962(c)**          pg.44

     **Parties, Agency, and Jurisdiction**                               3
     **Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts**    5
     **Post Petition Violations of Federal Authority and Due Process**          7
     **Deutsche Refuses to Meet & Confer RE: Abandonment of Asset by Trustee**   9
     **Background Violations of Law**                                   14
     **Further Violations of Law**                                       15
     **Deutsche's Lack Of Standing and Violations of Due Process**           20
     **Declaratory Relief Required**                                   21
     **Ex parte Young Injunction**                                     24
     **Plaintiff Acted In Good Faith And Defendants Have Not**             26
     **Deception and Undue Influence**                               28
     **Deutsche has Engaged in a Pattern of Fraud**                      30

1)       Comes now Plaintiff Peter Clark (herein also "Mr. Clark") to allege and state the following Complaint for **Injunctive Relief and/or Damages** resulting from alleged extortion under the color of law but in violation of the Bankruptcy Act, Due Process (14th Amendment), and thus civil rights as part of an extensive fraud:

      Said fraud began as violations of the Fair Lending Act; the Fair Debt Collection Practices Act; 15 USC 1962e] (12); Violations of Business & Professions Code §17200; RICO Act- 18 U.S.C. § 1962, Fraud, and Constructive Trust alleged against the "IndyMac Party" ("Indymac" Loan Services and/or "One West" Bank) and Does 1-20 which is the subject of litigation which must be amended that Plaintiff filed prior to filing for Chapter 13 Bankruptcy, which Bankruptcy was involuntarily converted to Chapter 7 liquidation. The Trustee agreed to abandon said litigation, but the Bankruptcy Judge has not yet ordered said abandonment. The pay-off for said fraud is occurring post-petition, by alleged extortion by "Deutsche" Bank National Trust Company in apparent collusion with the Honorable Bruce Mills under the color of law.

2)       Deutsche filed Unlawful Detainer Case #CD10-0170 on or about March 5, 2010, during the time of the automatic bankruptcy stay in Mr. Clark's Bankruptcy (filed February 10, 2010). Deutsche's goal is to rid the property at 1674 Pleasant Hill Road in Pleasant Hill, Contra Costa County, California ("Subject Premises") of the resident owner of 30 years and his frail and elderly tenant of Unit "B," Mary Bauer. However Deutsche is alleged to lack the legal right to do so, and is thus alleged to be using vigilante means in violation of due process and federal authority.

3)       Deutsche is alleged to have acted in an agency relationship with others to profit from violations of due process and federal authority after alleging to foreclose on Plaintiff's home without right or authority, and to take possession without actual standing per the rulings of Federal and State courts such as shown by *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008) and as shown herein. A joinder with the actual owner is required by Rule 19 (ibid.), however the Plaintiff is the legal owner. Deutsche's actions are alleged to constitute vigilante acts of fraud by a foreign funding pool that has no rights under State law because Deutsche appears to have not complied with the Business and Professions Code by filing a fictitious name statement. Deutsche is not a corporation or other entity that has legal rights interpreted to it under the U.S. Constitution either, and thus has no rights in an court. Why would the funding pool risk liability exposure to employees by failing to incorporate? The evidence suggests the reward may be large- tax evasion.

4)       Deutsche is also prevented from moving forward by collateral estoppels for lack of standing per *In Re Foreclosure Cases,"* 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007).

### PARTIES, AGENCY, and JURISDICTION

5)      This action is brought under 42 U.S.C. §1983, which Congress enacted to facilitate litigation invited by *Ex parte Young*, 209 U.S. 123 (1908) within that exception of the federal anti-injunction statute, 28 U.S.C. § 2283 (cf. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669). This action is also brought under 18 U.S.C. § 1962 (RICO Act); and State laws related to overlapping issues that form the same case or controversy. This court has jurisdiction because Plaintiff's primary residence for all times relevant herein in this Federal District at 1674 Unit "A" or Unit "B," Pleasant Hill Road in Pleasant Hill, Contra Costa County ("Subject Property"), together with an office and (conforming) business described as:,

> Lot 2, as shown on the map of Diablo View Gardens, the City of Pleasant Hill, County of Contra Costa, State of California, filed 12, March 1946, in Map Book 28, Pages 35 and 36, in the Office of the County Recorder of the County of Contra Costa.

6)      Plaintiff received a residential loan on the Subject Property in or about 2005, from information and belief, from Allstate Lending, secured by a deed of trust. "Indymac FSB" (Federal Savings Bank) alleges that they received an assignment of the Note and Deed of Trust in 2005.

7)      From information and belief, before 2008, Indymac FSB was engaged in the wholesale acquisition of sub-prime Notes and Deeds of Trust after 2004 to attain windfall profits during a time of lax enforcement of banking regulations, and because of the wholesale nature of their actions, did not obtain the original Note and/or Deed of Trust related to said sub-prime debt, but instead acquired electronic representations thereof.

8)      The website maintained by the Federal Deposit Insurance Corporations (FDIC) states:
> "On July 11, 2008, IndyMac Bank, F.S.B., Pasadena, CA was closed by the Office of Thrift Supervision (OTS) and the FDIC was named Conservator.  All non-brokered insured deposit accounts and substantially all of the assets of IndyMac Bank, F.S.B. have been transferred to IndyMac Federal Bank, F.S.B. (IndyMac Federal Bank), Pasadena, CA "assuming institution") a newly chartered full-service FDIC-insured institution."

> "On March 19, 2009, the Federal Deposit Insurance Corporation (FDIC) completed the sale of IndyMac Federal Bank, FSB, Pasadena, California, to OneWest Bank, F.S.B., Pasadena, California. OneWest Bank, FSB is a newly formed  federal savings bank organized by IMB HoldCo LLC.  All deposits of IndyMac Federal Bank, FSB have been transferred to OneWest Bank, FSB." (www.fdic.gov › Industry Analysis › Failed Banks)

9)      From information and belief, a group of investors created "One West" Bank as a holding company to purchase Indymac FSB from the FDIC at a heavy discount. From information and belief, One West then liquidated Indymac FSB without first transferring the Note/Deeds to a new entity, thus allegedly eliminating any alleged secured position that said investors might have alleged in the Subject Property by alleged means of said liquidated company. One West then

COMPLAINT

formed Indymac Loan Services, a new entity that they might allege is free of the liabilities of the past, but at the same time eliminated its assets and ability to foreclose legally on their deeds of trust. Realizing their blunder, it is alleged that One West brought in Deutsche Bank National Trust Company (herein also "Deutsche") as an alleged third party innocent buyer in alleged violation of Title VIII, 807, the Fair Debt Collection Practices Act 15 USC 1962e] (12).

10)     Deutsche Bank National Trust Company (herein also "Deutsche") is alleged to be a wholly foreign owned money pool that is not a corporation or other entity that has the rights of a corporation interpreted to the United States Constitution or Federal or State Law. Deutsche claims to have the approval of the Comptroller of Currency to operate as a bank in Orange County, but after a diligent search, the evidence indicates that no entity of the name of Deutsche was registered to operate under a fictitious name in California at the time of Deutsche's filing for unlawful detainer, allegedly because they do not have the legal status to do so. As a result, the evidence indicates that Deutsche has no standing or right to avail themselves of the courts.

11)     Why would the foreign owners of a money pool chose not to incorporate or otherwise avail themselves of the protections of the United States Constitution or register their fictitious name as required by State law? Their outlaw status risks the windfall profits that they are attaining by ignoring the loan modification guidelines that have become the policy of all major American banks. Why go out on a limb like that?  From information and belief they do so:

     a.     to make it difficult for American Citizens to serve them with process, and/or

     b.     to evade American taxes on a large portion of the gains of their enterprises.

12)     From the evidence that Deutsche has presented, Deutsche alleges that it became the trustee to allegedly hold title to the Subject Property, not for an entity, but for an *agreement of unknown nature* with an *entity that was liquidated* without transferring its rights. Thus Deutsche attorneys allege that Deutsche, a non-entity with no civil rights or ability to sue, holds title to the Subject Property as a Trustee for a *concept* related to an entity that does not exist, in a way that is not legally recognized. They do so by vigilante acts under the color of law but in violation thereof, and without apparent legal standing or authority.

13)     The Honorable Bruce Mills (Judge Mills) is, and for all times relevant herein has acted as a Judge of the Superior Court of Contra Costa. The evidence indicates that Deutsche attorneys duped Judge Mills into violating due process and federal authority, for which violations there is no sovereign immunity as supported by *Ex parte Young* 209 U.S. 123 (1908).

-4-

COMPLAINT

15)    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

16)    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein other than Judge Mills was the agent and employee of each of the remaining defendants and was at all relevant times acting within the purpose and scope of such agency and employment to exert rights they have not possessed, using means that are not supported by law, based upon agreements they have concealed, to attain maximum windfall profits from property about which they have no actual, legal, claim.

**Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts**

17)    In 2005 Peter Clark secured a debt to "Allstate" Lending with a deed of trust on his residence, office, and workshop at 1674 Pleasant Hill Road in Pleasant Hill, Contra Costa County, California ("Subject Premises"). One West Bank alleges that IndyMac Federal Bank, FSB, Pasadena, California received an assignment of both the Note and Deed of Trust from Allstate in 2005, however the evidence indicates that they had not received the Note at the time of an alleged foreclosure on said Note on October 22nd, 2009, when One West alleges that they foreclosed on said Note. Nor is there evidence that Indymac Loan Services' alleged successor in interest, Indymac Loan Services ("Indymac"), actually possessed the Note on November 4?, 2009, when Deutsche Bank alleges that it took possession of the "Trustee's Deed" to the Subject Premises in a series of sleight-of-hand moves that are alleged to have violated laws that include the Fair Debt Collection Practices Act as part of Defendant's alleged fraud delineated in part herein. The Case law suggests that all of these alleged acts are void or voidable.

18)    IndyMac Bank, F.S.B., Pasadena, CA failed, and on July 11, 2008, the Office of Thrift Supervision (OTS) closed it, and named the the Federal Deposit Insurance Corporation (FDIC) Conservator. On March 19, 2009, the FDIC completed the sale of IndyMac Federal Bank, FSB, Pasadena, California, to OneWest Bank, F.S.B., Pasadena, California. (www.fdic.gov › Industry Analysis › Failed Banks)

19)    OneWest Bank then liquidated Indymac Bank and formed a successor company, Indymac Loan Services. From information and belief, this was accomplished to limit their

liability regarding previous acts, however it is alleged that in so doing they eliminated their alleged assets and the security thereto, including their ability to foreclose on Notes. This is because the evidence, and lack thereof, indicates that Indymac never legally transferred their Notes and/or Deeds of Trusts, including on the Subject Premises, prior to OneWest Bank liquidating Indymac Bank.

20)     One West created a new entity, Indymac Loan Services. From information and belief, One West created Indymac Loan Services for the purpose of servicing allegedly outstanding Notes that do not, in fact, appear to be outstanding because the evidence indicates that Indymac Bank never legally transferred the Note or Deed of Trust to Indymac Loan Services prior to the liquidation. Indeed, is alleged that the reason why One West's attorneys did not document the transfer in a way that would make the debt collectable is <u>because the transfer of the Notes to the new entity would have caused a taxable event proportional to the short term capital gain that resulted from their discounted purchase of the notes weeks before. Thus, it is alleged that to evade federal and State tax liabilities on their alleged liability evasion scheme, One West never legally transferred Indymac Bank's alleged Deeds of Trust to the new entity, Indymac Loan Services. It is thus alleged that Indymac Loan Services never actually possessed the Note on the Subject Property, and thus did not have the legal standing to foreclose on said Note.</u>

21)     Of possibly equal merit, however, is the fact that One West continued to make "false or misleading representations" (in violation of Title 15, Chapter 41 Subchapter V §1692) that Indymac Bank held the Note and Deed of Trust, and that is that name in which they allege that they provided notice of a foreclosure sale of the Subject Property, which Notice was allegedly never sent, as it was never received by the debtor or the Second deed holder (see the Declaration of Alan Kilpatrick, filed and attached herewith).

22)     Deficient service of Notice is alleged to have additionally invalidated the alleged foreclosure that One West at first claimed as making the Subject Property "Real Estate Owned: of One West, but which Deutsche Bank later claimed was instead owned by Deutsche Bank as trustee for an alleged agreement that they have not put into evidence but which does not appear to constitute a trust, partnership, corporation, or anything that could hold legal title to property.

23)     Instead, One West agents pretended to engage in loan modification while their "Default Escalation Specialists" schemed to facilitate foreclosure actions in secret. The secrecy was

COMPLAINT

maintained, in part, by their failure of notice related to the alleged Notice to Vacate, which was also never received, and allegedly never sent.

24)     The evidence indicates that other One West Attorneys foresaw the problem of Indymac Loan Services foreclosing on a Note that they had been alleging was held by Indymac Federal Bank, FSB, and as a result, brought in Deutsche Bank National Trust Company as an alleged "Innocent Buyer" in what is alleged to be a form of money laundering in violation of the Fair Credit Practices Act. This alleged transfer is alleged to have only compounded the alleged fraud, as is delineated further herein.

25)     Plaintiff filed for Chapter 13 bankruptcy (reorganization) on February 10, 2010, and Deutsche filed an unlawful detainer action against Plaintiff less than on month later, on or about March 5th, in prima facie violation of the Automatic Bankruptcy Stay. Plaintiff stipulated to a lifting of the stay related to the Subject Property, however case law suggests that Plaintiff's doing so did not relieve Deutsche of liability related to their violations of stay, which Deutsche greatly compounded by engaging in numerous violations of the authority of the Bankruptcy Trustee and court, as delineated further below.

**Post Petition Violations of Federal Authority and Due Process**

26)     On or about May 6th, 2010, Peter Clark's Chapter 13 reorganization was involuntarily converted to a Chapter 7 liquidation.[1] This act placed all of Mr. Clark's assets and pending lawsuits under the authority of the bankruptcy trustee by the authority of the Bankruptcy Act, requiring a stay for the change of attorney that prevented Mr. Clark from defending himself from the Deutsche's legal assaults and the Indymac Parties actions.[2]

---

[1] The United States Bankruptcy Court for the Northern District of California on Thursday, May 6, 2010 in In re Peter Carson Clark, Case No. 10-41422EJ, ruled to convert a bankruptcy proceeding initiated by Peter Clark on February 10, 2010 under Chapter 13 of the Bankruptcy Code, to a Chapter 7 liquidation. Federal Judge Jellin signed the Order Converting Chapter 13 Case to a case under Chapter 7 on May 12, 2010.

[2] Bankruptcy Code Section 541, Title 11 U.S.C. § 5411, transfers Peter Clark's property to the trust estate. Section 323 makes the Chapter 7 Trustee the estate's representative, including for purposes of litigation. Section 704 vests in the Trustee the sole authority to collect and liquidate the estate's property. In other words, conversion of the bankruptcy proceeding to a Chapter 7 liquidation removes Peter Clark as the Defendant and makes the Trust estate the Defendant instead. One of the immediate issues is the change in attorneys related to the case from Peer Clark to the attorney for the Trust estate. Due process would require a delay in any proceedings as a result of this change of attorneys alone. While the Bankruptcy Trustee has given notice that he would like to abandon the asset, in the current situation, the case exists in a netherworld in which the case is still in federal jurisdiction because the Bankruptcy Court has not yet ordered the Bankruptcy Trustee to abandon the asset, an action that by federal civil

COMPLAINT

26)     Deutsche and the Indymac Parties both attempted to move forward with motions on over a dozen occasions before a half a dozen judges in the Contra Costa Superior Court related to the Subject Property in actions that were now under the jurisdiction of the Bankruptcy Trustee. However the evidence indicates that they did not serve the Trustee with the Motions, and have otherwise violated due process and the authority of the Trustee and/or the Trust Estate, as well as the right of Mr. Clark to have his "day in court" at a time when he was prevented by federal law from acting on his own behalf. As a result, Mr. Clark's case was never heard.

27)     Deutsche's counsel then admitted to the court in Department 29 that it could not proceed because the asset, and the case, was under the authority of the Chapter 7 Bankruptcy Trustee and not the Debtor[3]. The order required of the bankruptcy judge is for the abandonment of the asset by the case trustee, not of the removal of the "automatic" stay, which had already occurred.

28)     Deutsche knew this, but attempted to confuse local judges by painting the issue as being a need to remove the automatic stay. Deutsche knew better because attorney Frank Ferris provided repeated Amicus Briefs which repeatedly informed them, and the courts, of the true issues related to the required order by the bankruptcy court for the Trustee to abandon the asset, including the cases related thereto, from the trust estate. Deutsche engaged in ex parte communication with Judge Mills, and scheduled a hearing without notice to the Trustee. Judge Mills is alleged to have violated federal authority and due process by granting Deutsche's Summary Judgment motion despite a lack of jurisdiction and despite innumerable triable issues of fact, in a hearing at which the Plaintiff was prevented by federal law from acting in his own defense. Judge Mills made his alleged ruling after repeated lobbying by the Deutsche attorneys and then collusion that constituted ex parte communications with the judge outside of the presence of opposing counsel. [See declaration of Alan Kilpatrick filed and attached herewith.] They cannot claim that their violation of Federal jurisdiction was innocent. A damages award against Defendants is thus required, as supported by extensive case law.

---

procedure would not take effect until 10 days after the order for the Indymac or Deutsche Parties to even schedule a hearing  regarding the cases during this period thus violates federal authority and due process.

[3]     This is not the same thing as the automatic stay, which Mr. Clark had already stipulated to have lifted regarding the asset. The transfer of the cases to federal authority requires its own stay, however, if only because of the change in counsel. To proceed requires the bankruptcy trustee to agree to litigate, or the Bankruptcy Judge to make an order for the Trustee to release the action from the federal jurisdiction.

**Deutsche Refuses to Meet & Confer RE: Abandonment of Asset by Trustee [11 USC §554]**

29)       Deutsche has no actual standing and thus the Contra Costa court has no jurisdiction, but proceeded anyway. There will continue to be a problem of due process and violations of federal authority preventing that court from moving forward with Deutsche's motions until the Bankruptcy Court orders the case trustee to abandon the asset under 11 USC §554. The debtor tried to Meet and Confer with the Movant to stipulate to an abandonment of the asset under 11 USC §554 and thus removal of the Subject Premises, and the associated cases, from federal jurisdiction, however the Movant has refused to cooperate. As a result, Mr. Clark is still in the process of getting the federal Court to abandon the asset in the absence of cooperation from the Movant. This does not relate to the "Automatic Stay" under 11 USC §362(a),

30)       In keeping with these efforts, Peter Clark's then bankruptcy attorney, Lisa Edgar-Dickman, sent notice to all creditors of the intent of the debtor to request said Order for Trustee to Abandon Asset[4]. Peter Clark asked for a meet-and-confer regarding the matter, however the Deutsche and the Indymac Parties refused, and continue to refuse, to meet and confer regarding a stipulation for the Bankruptcy Court to order the case trustee to abandon the asset under 11 USC §554.  Instead, Deutsche moved the Bankruptcy court for an order to lift the automatic stay under 11 USC §362(a), a request that was moot because there was no stay in place at the time.

> An order lifting or modifying the automatic stay by itself does not constitute a de facto abandonment of the property of the estate. Procedures under § 554 must be followed before property is legally abandoned. *Catalano v. CIR,* 279 F.3d 682 (9th Cir. 2002)

31)       Mr. Clark, attempted to meet an confer with the counsel for the Moving Party via e-mail twice to reach an agreement that would relieve the Contra Costa Court, and the Bankruptcy Court, of the burden of a hearing what was improperly scheduled in alleged contempt for Federal authority and in violation of due process, however opposing counsel refused to respond. The following is a transcript of the two messages, starting with the most recent, sent on August 5, 2010:

> Peter Clark <2peterclark@gmail.com>
> to            Amy Starrett Deutsch<astarrett@jandalegal.com>
> date         Aug 5, 2010 4:20 PM
> subject      Re: Meet and confer

---

[4] The Notice was a "shout or die" notice that requires objectors to make their objections known or the asset will be abandoned.

| date | Aug 5, 2010 4:20 PM |
| subject | Re: Meet and confer |

Amy:

I am disappointed that you continue to fail to respond to my attempts to meet and confer with you. I am further disappointed in your instead attempting to move forward with a motion before the Bankruptcy Court to remove an alleged stay that did not exist, an act that greatly irritated the Judge.

As you are no doubt aware now, even if you were not previously, the proper action at this juncture is the motion for the Court to compel the Trustee to abandon the asset that my (former) attorney, Lisa Edgar Dickman, filed and mailed to all of the creditors on my behalf, and which you no doubt received last month. In doing this, Mrs. Dickman and I are acting at the request of the attorney for the Chapter 7 Trustee.

Mrs. Dickman also sent an e-mai to me explaining how things must proceed prior to further litigation between Deutsche Bank National Trust Company and myself, as follows:

> "The motion to abandon I prepared was with a 21 days Notice and Opportunity of Hearing known by BK attorney as a scream or die notice. Which means if someone objects you must call Judge Jellen's clerk and set a court date, and if no one objects you submit the order after 21 days- hence the scream or die nickname. So there is no court date scheduled
> ...
> The notice was sent to every single creditor and I used the court matrix list. .(excerpted from e-mail from Lisa Edgar Dickman to Peter Clark dated July 31, 2010).

Please note that the August 13th hearing date that your agents scheduled with Judge Mills in an ex parte appearance before Judge Mills without notice to, and thus outside of the knowledge, much less presence of opposing counsel, is also prior to the first time that I could reasonably expect the Bankruptcy Court Judge (Jellin) to sign an order to abandon. As a result, the hearing scheduled for August 13th must be removed from the calendar, and no new hearing date requested from the court until, from my understanding of Federal Rules, 10 days AFTER the Bankruptcy Court Judge signs the order.

Thus, please withdraw the hearing scheduled for August 13th from the calendar immediately so that you do not place further unnecessary burdens on the court, or others that would be involved in your further transparent attempts to violate due process.

Thank you in advance for your immediate attention to this matter.

Peter Clark

| from | Peter Clark <2peterclark@gmail.com> |
| to | Amy Starrett Deutsche <astarrett@jandalegal.com> |
| date | Jun 28, 2010 11:03 AM |
| subject | Meet and confer |

On 6/28/10, Peter Clark <2peterclark@gmail.com> wrote:
> Amy:
> I am concerned about your failure to follow legal procedure, including
> regarding the mandatory meet-and confer requirements of both Federal
> and State civil procedure. In particular, you have not responded to
> my meet-and-confer letter of June 24, 2010, and instead proceeded
> with the hearing on June 25 (with my being present solely as a
> witness). It was only after the recusal of two judges, three hours
> later on their own that your local counsel finally agreed that your
> attempting to move froward was in violation of federal law and
> California Civlil Procedure.
> Your local counsel then suggested an approach which differs from what
> the attorney for the Chapter 7 told me was the steps that he proposed
> that I take, and which I do not believe to be viable for removing the
> action from the Chapter 7 Trust Estate. I thus request that you
> provide me with a copy of what you propose to file BEFORE you file it,
> thus complying with your meet-and-confer requirements.
> Also, please advise me of when you propose to take this action.

**–10–**

**COMPLAINT**

32)     Instead, Deutsche moved the Bankruptcy court for an order to lift the automatic stay under 11 USC §362(a), a request that was moot because no stay was in place at the time. Deutsche knew this, and, it appears, they angered Bankruptcy Judge Jellin by burdening that court with unnecessary appearances that should have been settled by stipulation of the actual issue after a meet-and-confer.

33)     The Trustee agreed to abandon the asset in or about the end of July. In a hearing the Bankruptcy Judge offered to sign an order for the Trustee to abandon the asset, however the statutory 21-day period had not yet elapsed at the time. Before the 21-day period elapsed, two objections to the abandonment were filed with the court. The evidence indicates that Judge Jellin is required by public policy to sign a "comfort letter" related to the removal of stay, which Judge Jellin did, but the judge did not make the order to abandon the asset because of the objections by the other creditors. Because of those objections, and because of the failure of the Deutsche and the Indymac Parties to stipulate to the abandonment of the asset, and because the attorney for the bankruptcy Trustee did not file an agreement to abandon with the court (according to the Clerk), even though he agreed to abandon, Mr. Clark is now forced to schedule a hearing on the issue, which hearing has not yet been held. Part of the reason that Mr. Clark did not schedule the hearing yet is because, in the interests of justice, he needs to deal with said objecting alleged creditors, one at a time, to prevent them from further interference in the orderly administration of the trust estate. At least some aspects of the current (Adversary) case must now also be adjudicated prior to either of the other cases moving forward.

34)     Deutsche's counsel then engaged in ex parte communications with Judge Mills outside of the presence of the opposing counsel, Dennis Davis, attorney for the Trustee. Based upon the proofs of service, Dennis Davis was never properly served.

35)     In proceeding, Deutche and Judge Mills violated Federal Authority of the Chapter 7 Bankruptcy Trustee and due process in an action for which Deutsche had no standing and thus the Contra Costa Court had no actual jurisdiction, and for which there was numerous failures of notice, failure of due process, and a breach of justice (See *Amicus Brief of Frank Ferris*, filed and attached hereto as EXHIBIT E. Willful violations require sanctions, as will be shown. There is no sovereign immunity granted to state court judges who act under the color of law but in violation of Federal authority (the Bankruptcy Act), Due Process (14th Amendment), and thus civil rights as supported by *Ex parte Young*, 209 U.S. 123 (1908), and the clear intent of Congress

in enacting 42 U.S.C. §1983 to facilitate litigation as an exception to the federal anti-injunction statute, 28 U.S.C. § 2283 (cf. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669).

> "It is clear from the legislative debates surrounding passage of § 1983's predecessor that the Act was intended to enforce the provisions of the Fourteenth Amendment 'against State action, . . . whether that action be executive, legislative, or judicial.' *Ex parte Virginia*, 100 U.S. 339, 346, 25 L.Ed. 676 (emphasis supplied)- Justice Stewart for the Majority Opinion in *Mitchum v. Foster*, 407 U.S 225, 92 S.Dt., 32 .Ed.2d 705 (1972).

36)     It is of further note that the action in question was for summary judgment, which requires that there be no "triable issues of fact" (California Rules of Court: Article 5, § 3.1350 et seq., and California Code of Civil Procedure §437c). Yet Judge Mills gave the impression to observer Alan Kilpatrick  that he was acting in collusion with the Deutsche attorney by prosecuting the case for him and ruling in the absence of opposing counsel, ordering summary judgment despite lack of jurisdiction, substantial defenses that Mr. Clark had previously pled, and the existence of considerable triable issues of fact (See EXHIBIT A, Peter Clark's Undisputed Facts).

> "The function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.]‖ (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) Page 1- A of transcript cited below.
> A. —A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.‖ (437c, subd. (p)(2).) [2010 State Bar of California 83rd ANNUAL MEETING Page 3- A of transcript of Program #80 "Summary Judgment: Recent Developments and the View From the Bench Friday, September 24, 2010 4:15 PM - 5:15 PM Sponsored by Litigation Section DEFENSE MOTIONS FOR SUMMARY JUDGMENT Justice Rick Sims March, 2010 © 2010 by Rick Sims]

37)     <u>Deficient Notice:</u> Contrary to Deutsche Bank's claim in their unlawful detainer Summary Judgment Motion against Mr. Clark, Mr. Clark denies that a notice to vacate was posted on the Property on 11/25/2009. Mr. Clark did not see the alleged posting, nor did the tenant. In addition, upon information and belief no notice to vacate was mailed to the Respondent nor to his tenant. Declarations of Mary Bauer and Peter Clark both state they never received notice. The notice attached as Defendant's Exhibit B to their unlawful detainer only lists Mary Bauer, tenant, with an improper address, when Defendants knew the property was owner-occupied in a different address from the loan modification and from their ongoing communications.

38)     As a result of the lack of service, Mr. Clark did not learn that Deutsche Bank alleged that they were the new owner of his home until after March 5, 2010, when Mr. Clark received a notification from the Contra Costa Courts that Deutsche Bank had filed an Unlawful Detainer case against him and his frail and elderly tenant in which Deutsche allege that they had provided notice 90 days before.

and a breach of justice. Willful violations require sanctions, and it appears that there is no sovereign immunity granted to judges.

38)      It is of further note that the action in question was for summary judgment[5], which requires that there be no "triable issues of fact." Yet Judge Mills gave the impression to an observer that he was acting in collusion with the Deutsche attorney by acting in his place on behalf of the Deutsche attorney in ordering summary judgment despite lack of jurisdiction, substantial defenses that were pled, and the existence of considerable triable issues of fact.

> "The function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.]‖ (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) Page 1- A of transcript cited below. A. —A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.‖ (437c, subd. (p)(2).) [2010 State Bar of California 83rd ANNUAL MEETING Page 3- A of transcript of Program #80 "Summary Judgment: Recent Developments and the View From the Bench Friday, September 24, 2010 4:15 PM - 5:15 PM Sponsored by Litigation Section DEFENSE MOTIONS FOR SUMMARY JUDGMENT Justice Rick Sims March, 2010 © 2010 by Rick Sims]

39)      <u>Deficient Notice</u>: Contrary to Deutsche Bank's allegations in their unlawful detainer Summary Judgment Motion against Mr. Clark, Mr. Clark denies that a notice to vacate was posted on the property on 11/25/2009. Mr. Clark did not see the alleged posting, nor did the tenant. In addition, upon information and belief no notice to vacate was mailed to the Respondent nor to his tenant. Declarations of Mary Bauer and Peter Clark both state they never received notice. The notice attached as Defendant's Exhibit B to their unlawful detainer only lists Mary Bauer, tenant, when Defendants knew the property was owner-occupied from the loan modification and from their ongoing communications. Said Defendant's Notice did not list the proper address.

40)      As a result of the lack of service, Mr. Clark did not learn that Deutsche Bank alleged that they were the new owner of his home until after March 5, 2010, when Mr. Clark received a notification from the Contra Costa Courts that Deutsche Bank had filed an Unlawful Detainer case against him and his frail and elderly tenant in which Deutsche allege that they had provided notice 90 days before.

---

[5] Summary Judgment process is set by California Rules of Court: Article 5, § 3.1350 et seq., and California Code of Civil Procedure §437c

41)    <u>Deutsche's response to Mr. Clark's Answer</u> completely mischaracterized Mr. Clark's Defense and failed to even mention, much less address, the vast majority of the triable issues of fact that Mr. Clark listed, or the reasons why that court does not have in personam jurisdiction or jurisdiction to render the verdict that Deutsche seeks. In so doing, Deutsche tacitly admits to the existence of those triable issues of fact and lack of in personam jurisdiction or jurisdiction to render the verdict that Plaintiff seeks. In addition, <u>Plaintiff has not addressed and thus tacitly admits to the numerous adverse rulings by other courts of competent jurisdiction against Deutsche on the same issue of standing that Mr. Clark frought forward as a defense to the Summary Judgment Motion.</u> Deutsche spent most of its argument (the first 11 pages), trying to un-ring the bell of rulings adverse Deutsche regarding standing by arguing Quiet Title issues that the unlawful detainer court lacks jurisdiction to decide, and whose primary issue (of standing) has been decided against Deutsche in said numerous referenced cases. As such, Deutsche has tacitly admitted that the primary issues of fact related to the current ownership of the Subject Property have already been adjudicated adverse to Deutsche Bank, and thus Deutsche Bank is estopped from arguing these issues again.

42)    In short, Deutsche lost sight of the fact that they brought forward a motion for Summary Judgment in an Unlawful Detainer case where they have the burden of proof to show that they have in personam standing; that the Contra Costa court has jurisdiction to render the verdict that Deutsche Bank seeks; and that Deutsche has meticulously adhered to all of the notice and other due process requirements, none of which are true in this case, and other issues that preclude a ruling in summary judgment. By ignoring these serious and consistent violations of notice, law, and other violations of due process that they had to adhere to for them to prevail in an Unlawful Detainer case, they tacitly admit to said violations, and cannot prevail for this reason as well.

43)    As a convenience to Deutsche, Peter Clark provided Deutsche with MS Word '97 compatible versions of Defendant's Answer and Defendant's Statement of Undisputed Facts prior to the first hearing of that case (after faxing the document) in keeping with the notice requirements of unlawful detainer summary judgment. Mr. Clark did this, in part, to make it easy for Deutsche to address the issues brought forward by Defendants, point-by-point, in the accelerated time frames of an unlawful detainer summary judgment action. Mr. Clark asked that Deutsche return the favor, again, in part, to allow the issues to be addressed point-by-

-13-
COMPLAINT

point. Deutsche failed to do so, apparently because it had no answers to most of Defendants'
points, on the apparent hope that by arguing the Quiet Title case in that court rather than the
unlawful detainer, that the unlawful detainer Court would be wowed by Deutsche's
international stature and thereby ignore their violations of law such as 15 USC 1962e] (12) *The
false representation or implication that accounts have been turned over to innocent purchasers
for value.* To use the state courts, Deutsche Bank must comply with both Federal law and
state law in the way that Defendants show that Wells Fargo Bank N.A. has.

44)      There were thus considerable triable issues of fact, however Mr. Clark could not act for
his own defense during the time of the hearing, and thus sent an observer, Alan Kilpatrick, as
a witness to the events. Mr. Kilpatrick provided a declaration, which is filed and attached
herewith (declaration of Alan Kilpatrick). Said declaration describes what Mr. Kilpatrick
describes as "collusion" during the ex parte communications outside of the presence of
opposing counsel during deliberations in which the judge did not consider the existence of the
substantial triable issues of fact and substantial defenses in Mr. Clark's ANSWER. Mr. Clark
has no recourse in the California Courts because of the continued Federal jurisdiction.


# BACKGROUND

45)      Without actual standing to do so and without proper notice, Defendant Deutsche Bank
National Trust Company, which is alleged to not be a corporation or any entity that has rights
under Federal or State Law, alleges that they engaged in a foreclosure action on October 20 or
November 2, 2009, by an alleged foreclosure mill process that is alleged to be in violation of both
Federal and State law regarding the "Subject Premises" at 1674 Pleasant Hill Rd., Pleasant Hill,
CA 94523 (units "A" and "B") herein also the "Subject Property."

46)   The One West Parties had been engaged in a process of alleged fraudulent misrepresentation
that culminated in their keeping secret from Plaintiff Deutsche's identity as the alleged
foreclosing entity until Deutsche filed an unlawful detainer action on or about March 5, 2010
against Plaintiff and his elderly tenant, Mary Bauer (Ms. Bauer), to evict Plaintiff and Ms. Bauer
from their homes.

47)   Deutsche's actions to acquire alleged title are void for lack of standing and by collateral
estoppels as mentioned previously and delineated below (***In Re Foreclosure Cases***," 521 F.

Supp. 2d 650, 653 (S.D. Oh. 2007 and *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008). A Quiet Title action is thus required per California Code of Civil Procedure Sections 760.10-760.060.

48)   The evidence indicates that the fraud and other violations of law delineated herein are typical of a massive fraud that Defendants are perpetrating against homeowners across the United States.

49)   One of the allegedly illegal methods that Defendants used in the current case is a previously secret "bait-and-switch" of ownership interests to provide the illusion that Deutsche is an innocent buyer of the Note and/or Deed of Trust on the Subject Property. This act additionally violates the letter and intent of 15 USC 1962e] (12) *The false representation or implication that accounts have been turned over to innocent purchasers for value.* (Fair Debt Collection Practices Act, Title VIII, 807). Defendants kept this concealed by several further violations of notice requirements that would have had to have been met for legal transfer of the ownership, as well as for their subsequent unlawful detainer action.

50)   In this way, Defendants have attempted to exact windfall profits by violations of law in areas where they have enjoyed immunity from the legal consequences until 2007. Deutsche and One West both got away with said violations of law and due process in acts that are alleged to fit the legal description of extortion and money laundering as delineated further herein. State and Federal Judges started to intervene in 2007, however, as delineated further herein.

51)   The money laundering alone is alleged to void the note and deed of trust.

**Further Violations of Law**

52)   In 2007, Deutsche attempted to reduce costs for their eviction mill process by foreclosing on and evicting fourteen of their clients at the same time in Federal District Court in Cleveland Ohio ("*In Re Foreclosure Cases,*" 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007). In that case, US Federal Judge, C.A. Boyko saw the consistent pattern of violations of law in all cases. As a result, Judge Boyko ruled to dismiss the claims by Deutsche Bank National Trust Company to take possession of any of the 14 homes for lack of standing. Knowing this, Defendants are alleged to have engaged in an agency relationship to provide the illusion of a bona fide third party purchaser of Notes and Deed of Trust in general, and on Plaintiff's home of thirty years specifically, at a time when banks are known to not be buying the notes of other banks.

53) Defendant's actions additionally invalidates the title that Deutsche claims on the subject property because the Notice provided by Defendants listed Indymac, and not Deutsche Bank as the foreclosing note holder, yet Deutsche Bank now claims that they were the foreclosing note holder, thus rendering the Notice void, additionally invalidating the foreclosure. In fact, the evidence indicates that neither Deutsche Bank nor Indymac actually held the Note or Deed of Trust at the time, while state and federal law require that, "[t]o show standing in a foreclosure action, . . . the plaintiff must show that it is the holder of the note and the mortgage at the time…" (*"In Re Foreclosure Cases,"* 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007).

54) The evidence indicates that Defendant Deutsche is not a bona fide buyer of the Note and Deed of Trust on the Subject Property in any capacity; did not follow legal procedures in an alleged assignment of a deed of trust or in foreclosing; and did not actually possess the right to foreclose. Nor did the Trustee comply with *"all applicable statutory requirements of the State of California (or) perform all duties required by the Deed of Trust (by) sending a Notice of Default and Election to Sell within ten days after its recoding and a Notice of Sale…in compliance with California Civil Code 2924(b)* as Deutsche Bank alleges in their unlawful detainer action to evict Plaintiff and his frail and elderly tenant from their home. The alleged foreclosure action is thus further void as a result of this additional violation of due process.

55) **Deficient Service:** Contrary to Deutsche Bank's allegations in their unlawful detainer, the trustee for the Deed of Trust did not provide the required Notice of Sale {See declaration of Alan Kilpatrick, filed and attached herewith), nor was Mr. Clark. In addition, Mr. Clark was NOT served with Notice to Quit (nor was his tenant, Mary Bauer, as shown by their declarations.[6]

56) **No actual standing for unlawful detainer:** Deutsche is not a Corporation or an entity that has filed a fictitious name statement and thus they cannot *"maintain any action… in any court"* by Bus. & Prof. Code ¶¶17915-17918. Deutsche thus has no actual rights to sue or move forward "any action in any court" in California. Nor is the non-entity agreement with a liquidated former entity for which they allege to be Trustee, and their actions with agents is alleged to violate both Federal banking laws and State laws:

---

[6] Mr. Clark did not learn that Deutsche Bank alleged that they were the new owner of his home until after March 5, 2010, when Mr. Clark received a notification from the Contra Costa Courts that Deutsche Bank had filed an Unlawful Detainer case against him and his frail and elderly tenant in which Deutsche allege that they had provided notice 90 days before.

57)     Deutsche argues that they are exempt from state laws by their federal charter, however this is simply not the case. To the contrary. Federal Charter Banks are required to act as if they are state chartered banks and otherwise comply with all requirements to do business in a state which would include filing a Fictitious Name business statement. States are prohibited from adding any <u>additional</u> requirements to a federal charter bank that are not required of a state charter bank. In addition, the Office of the Comptroller of Currency has not approved Deutsche operating in Contra Costa County.

58)     Because Deutsche Bank in not licensed in California or filed a fictitious business name statement, they cannot "*maintain any action... in any court*" by Bus. & Prof. Code ¶¶17915-17918. However Deustche is also not a corporation or other entity that has rights, and cannot legally prevail in their suit for unlawful detainer for this reason as well. Deutsche argues that these issues cannot be considered in an unlawful detainer case, however case law supports Mr. Clark's position that the question of jurisdiction is always a matter that must be considered, and that any judgment rendered without jurisdiction by a court is void.

59)     Deutsche would like that none of this be considered prior to an unlawful detainer action, in which they allege that the law assumes that their actions are without fault because they say so.

60)     At the time that Defendants <u>now</u> allege that Deutsche foreclosed on Plaintiff's home, Indymac Loan Services and "One West Bank" were alleging that Indymac /One West Bank took ownership of the Subject Property as "<u>Real Estate Owned (REO)" by Indymac/One West Bank on October 20, 2009,</u> as shown by the last paragraph of the EXHIBIT B letter that Mr. Clark received dated November 17. 2009 (one month after Defendants now allege that Deutsche Bank took the property in foreclosure. Both of Defendant's stories cannot be true, and thus one must be false. By the legal principle of "false in one, false in all, (Falsus in uno, falsus in omnibus), the entire house of cards of these alleged transactions must be ruled to be fraudulent, as, indeed, it has been for Deutsche and Indymac on numerous occasions across this country since 2007.

61)     From information and belief, Deutsche violated numerous Federal and State laws in bringing forward their action against Mr. Clark without apparent standing:

62)     Indymac has alleged that in 2005 it bought the Note <u>and</u> Deed of Trust on the subject property, which it continued to claim to hold as late as June 9, 2010. There is no indication that there was a legal transfer of both the Note and Deed of Trust from the original lender, Allstate. In addition, Indymac was liquidated in 2008, and <u>there is no indication that there was a transfer</u>

of both the Note and Deed of Trust prior to Indymac being liquidated. Indymac pretended to engage in loan modification in its name through most of 2009 (until November 17th, one month AFTER One West alleged that they foreclosed on the Subject premises, and two weeks after Deutsche claims that they took Ownership of the Subject Property in place of Indymac by a process that itself appears to have violated federal and state laws.

62)     Indymac has represented for years that it was they, and not Deutsche Bank, who held the Note, including as verified by the November 17, 2009 letter from Indymac/one West to Peter Clark, a copy of which Mr. Clark supplied as his EXHIBIT A to his Answer in the Unlawful Detainer. (Both Peter Clark and the holders of the Second Deed of Trust, Alan Kilpatrick and Jo Ann Kilpatrick, both deny receiving Deutsche's EXHIBIT "D" alleged NOTICE OF TRUSTEE'S SALE, thus invalidating the sale for the additional reason of failure of notice).

63)     The evidence indicates that One West, realizing that Indymac could not legally act after it was liquidated, brought in Deutsche Bank as an alleged innocent buyer of the subject property in apparent direct violation of the letter and intent of the *Fair Debt Collection Practices Act* Title VIII, 807). (15 USC 1962e] (12) *The false representation or implication that accounts have been turned over to innocent purchasers for value*. The fact of their false pretense is verified by the alleged "Trustee's Deed Upon Sale" (Plaintiff's EXHIBIT A to Deutsche's Summary Judgment Motion), which states as its first statement *"The grantee herein (Deutsche) IS the foreclosing beneficiary."*

64)     The alleged title-holder (per an alleged Trustee's Deed) is "Deutsche Bank National Trust Company as Trustee for"...an agreement with a company that no longer exists. Yet Deutsche as Trustee has not placed into evidence the agreement that they allege owns the asset, or any documents related thereto.  As previously delineated, Deutsche is claiming title for an agreement with a liquidated entity in a way not legally recognized in California.

65)     Deutsche has not filed a fictitious name statement, and thus cannot move forward, and is also not the real party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure as supported by *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal., 2008), A joinder with the actual owner is required by Rule 19 (ibid.), and *In re Kang Jin Hwang* would give rise to uncertainty about who that owner is even without the uncertainty about the non-existent Trust or the questionable legal status of  Deutsche as Trustee for an entity that

COMPLAINT

does not appear to exist, Deutsche as Trustee is also prevented by collateral estoppels from moving this court for lack of standing in Debtor's Bankruptcy per *In Re Foreclosure Cases*," 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007).

66)     With *In Re Foreclosure Cases*, <u>Federal District Court Judge Boyko overturned fourteen of fourteen attempted foreclosures and evictions attempted by Deutsche Bank National Trust Company for lack of standing</u> under a condition substantially identical to one of the conditions present in the current case regarding Deutsche as Trustee's misrepresentations of evidence as part of an alleged massive fraud against actual American citizens who have actual protections by the United States Constitution (which Deutsche allegedly does not).

**Bad Faith Deception, Fraud, and 15 USC 1962e] (12)** Fair Debt Collection Practices Act, Title VIII, 807

67)     Indymac Party Defendants are alleged to have prefaced Deutsche's fraud with bad faith <u>Pre-Petition</u> deceptive business practices that violated the covenant of good faith and fair dealings in an agency relationship with each other to gain windfall profits from their violation of legal procedures in violation of the Fair Credit Practices Act, the Business & Professions Code §17200 , and other violations of alleging to foreclose on Plaintiff's home and now to take possession without apparent actual standing and/or other fraud, and in an agency relationship with Deutsche Bank to rid the property of the 30 year resident and his frail and elderly tenant. The evidence indicates that this <u>Post-Petition</u> claim constitutes another violation:

> 15 USC 1962e] (12) *The false representation or implication that accounts have been turned over to innocent purchasers for value.* (Fair Debt Collection Practices Act, Title VIII, 807).

68)     Plaintiff did not know of the ruse until Plaintiff received a notification from the Contra Costa Courts that Deutsche Bank had filed an Unlawful Detainer case against Plaintiff and the tenant of Unit "B," Mary Bower, Case # CD10-0170 in or about March 5, 2010, three weeks <u>after</u> Mr. Clark filed for bankruptcy protection. Deutsche has violated Federal authority so their unlawful detainer action will be heard prior to the issue of their (lack of) standing is heard.

69)     The evidence indicates that Deutsche did not possess the underlying Note and/or trust agreement giving authority for Deutsche to act on their own behalf or on behalf of Indymac to foreclose on the real property commonly known as 1674 Pleasant Hill Rd., Pleasant Hill, CA 94523 (herein "Subject Property), or for Indymac/ OneWest or Quality Loan Services to act at

all. In addition, there are major issues regarding the underlying alleged foreclosure(s) and events surrounding said alleged foreclosure(s) alleged on October 20, 2009 AND November 10, 2009. Both are not possible, so at least one must be fraudulent.

70)     The evidence indicates that Defendants are not the legal owners of the subject property:

> "For an assignment to be valid there must be more than the assignment of the deed alone; the note must also be assigned See *Carpenter v. Logan*, 83 U.S. 271, 274 (1872) stating that the note and mortgage are inseparable; the former as essential, the later incident adding that an assignment of the note carries the mortgage with it" as quoted from *Saxon Mortgage Services, Inc vs Ruthie B. Hillary et al* Case No.C-08-4357 document 19. ——————*In re Leisure Time Sports, Inc.* 194 B.R. 859, 861 (9th Circuit 1996)

71)     Thus, it is the assignment of the note that carries the mortgage with it. Plaintiff demands strict proof that Defendants possessed and were properly assigned the Note at those times,

72)     In 2008, U.S. Federal Judge, C.A. Boyko in Federal District Court in Cleveland Ohio ruled to dismiss a claim by Deutsche Bank National Trust Company seeking to take possession of 14 homes from Cleveland residents living in them, in order to claim the assets ("*In Re Foreclosure Cases,*" 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) (stating that, "[t]o show standing in a foreclosure action, . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed…"). This ruling has been echoed all over the country, and Defendants are precluded by estopples from prevailing today.

73)     On October 22, Indymac insisted that they had foreclosed and taken the property for themselves on October 20, 2009, per Indymac's agents, in response to calls by Plaintiff, and as late as their letter to Plaintiff dated November 17, 2009 (filed and attached as EXHBIT "B"), one week AFTER what Defendants are now alleging as the date of a foreclosure sale to Deutsche Bank on November 10, 2009, per Deutsche Bank's current story. Plaintiff relied on the veracity of Indymac's story, which they now state was false, and Plaintiff was damaged as a result. Once again, Indymac fraudulently induced Plaintiff to remain out of Bankruptcy, possibly so they could arrange their paperwork. Thus, even if they did have the proper paperwork for the foreclosure, which is denied, said alleged foreclosure would have still been the product of fraud.

### Issues Of Law Re Lack Of Standing And Violations Of Due Process

74)     Plaintiff states upon information and belief that Defendants lack standing to foreclose or to bring their unlawful detainer action against Plaintiff. Plaintiff believed that Indymac/ One West Bank was the foreclosing lien holder, an allegation that Indymac alleged as late as their

-20-

COMPLAINT

November 17 letter to Plaintiff (EXHIBIT B), three weeks after they alleged they foreclosed on Plaintiff's Property on October 20, 2009. This is one week after Defendants now allege Plaintiff's property was foreclosed on November 10, 2009, as reflected by the alleged Trustee's Deed Upon Sale issued by Quality Loan Service Corporation to Deutsche Bank National Trust Company as Trustee for Indymac, and not as the new owner, as Defendants now allege. At least one of their allegations must be false. According to the legal principle of "False in One, False in All" (Falsus in uno, falsus in omnibus), all of Defendants' story must be held to be false.

**Declaratory Relief Required**

75)     An actual controversy has arisen and now exists between Plaintiff and Deutsche concerning their respective rights and concerning the ownership of the Subject Property and the legality of the business practices of Defendants during this time of economic emergency[7].

76)     The evidence indicates that Defendants Indymac and Deutsche Bank have lost lawsuits filed against them for lack of standing to engage in foreclosure proceedings without possessing the original Note and Deed of Trust, and/or other violations of law. Said lawsuit losses have included a federal action known as *"In Re Foreclosure Cases,"* 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) (in which a federal judge ruled against Deutche in fourteen foreclosures and evictions were only their lack of standing was at issue, providing the foundation for collateral estoppels in this case fourteen times. In that case, the Federal Judge opined that, "[t]o show standing in a foreclosure action, . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed…"

77)     A security interest cannot exist independent from the obligation that it secures. *In Re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th.Cir.Bap 1996) A security interest cannot exist, much less be transferred, independent from the obligation which it secures. *In re DiSanto & Moore Associates, Inc.,* 41 B.R. 935, 938 (C.D.Cal. 1984); *Union Supply Co. v. Morris*, 220 Cal. 331, 338-39, 30 P.2d 394, 397 (1934). The security interest follows the debt. Id. If the debt is not

---

[7]  The California Legislature recognized the economic emergency by their enactment of HR ABX 27 (The Foreclosure Prevention Act); and SB 1137, codified as California Civil Code 2923.5 and 2923.6. The high rate of foreclosures is causing unprecedented disruptions to the public, and to the real estate industry of which Defendants are a part. It is the clear intent of the California Legislature and the Governor that mortgage lenders pursue loan modification programs in good faith in the State of California, and thus minimize the threat to the state and local economies due to skyrocketing foreclosures. A similar intent has been expressed on a Federal level by the Obama Administration.

transferred, neither is the security interest. Id. The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. *Carpenter v. Longan*, 83 U.S. 271 (1872). It is well established that a plaintiff must prove standing by showing: (1) injury in fact; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that a favorable outcome will redress the injury. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

78)     *In Re Foreclosure Cases,"* was heard in Federal District Court in Cleveland Ohio. In that case, US Federal Judge, C.A. Boyko ruled to dismiss a claim by Deutsche Bank National Trust Company to take possession of 14 homes. Knowing this, One West is alleged to have engaged in an agency relationship with Deutsche to provide the illusion of a bona fide third party purchaser of the Notes and Deed of Trust on Plaintiff's home of thirty years at a time of economic disruption of such unprecedented proportion that banks are known to not be buying the notes of other banks. Indeed, American Banks were being tightly controlled to insure that they would not pick up more junk paper. This explains why One West went to Deutsche to complete their fraud. It does NOT explain how Deutsche was able to do this while receiving $6 Billion dollars in TARP money despite the contrary intent of Congress.

79)     Deutsche has shown no ACTUAL evidence that Indymac ever received the underlying promissory note in the first place. Deutsche has shown no ACTUAL evidence that Indymac <u>ever</u> provided such Note to Deutsche Bank, much less provided it prior to OneWest dissolving Indymac. Indeed, if Deutsche provided such evidence it would only underscore their <u>conspiracy</u> to engage in false and deceptive business practices for years. <u>In fact, the evidence seems to show that Deutsche has never had a de jure interest in the Subject Property and no standing to evict Plaintiff.</u>

80)     <u>Further, Deutsche is not a corporation which would have actual rights as interpreted by the Supreme Court to the U.S. Constitution (such as the right to hold title to property or to avail themselves of the courts), and has not shown any evidence that they have any actual rights under State law, which requires them to file a fictitious name statement.</u> Thus, it appears that Deutsche is an outlaw foreign money pool that received $6 Billion dollars in stimulus money despite the intent of Congress that such money should only go to American corporations, all while, the evidence suggests, evading U.S. taxes. *In Re Foreclosure Cases* shows that Deutsche had no right to foreclose or evict, and *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008) shows that

Deutsche would be without standing even IF they were a corporation that paid taxes and adhered to the requirements of the State of California for doing business in this state (including filing a fictitious name statement). No other Federal Charter Bank (such as Wells Fargo) alleges that their Federal Charter exempts them from such requirements, and such an assertion of Federal authority into the business of the State would have violated the 11th Amendment, something the State of California would never have allowed.

81)     However, the Plaintiff would be injured if their unlawful detainer action were granted because Deutsche seeks to evict Plaintiff from his home, office, and workshop at a time of tremendous economic disruption caused by Deutsche and their ilk by these and similar violations of law. Instead, Mr. Clark needs to re-organize his business affairs after being driven into the current bankruptcy by a massive fraud in the tens of millions of dollars by officers of this court, the law offices and attorneys of Wendel, Rosen, Black and Dean, (Wendel).[8]

82)     To show that they have actual standing to proceed with their unlawful detainer action, Deutsche must demonstrate that Deutsche:

        a.  is a legal entity, with rights, and

        b.  held the deed of trust and promissory note at the time of the alleged foreclosure.

83)     If Deutsche cannot show these things, it has no injury in fact. See *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007) (stating that, "[t]o show standing in a foreclosure action, . . . the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed [and] . . . that the holder of the note and mortgage is harmed, usually by not having received payments on the note").

84)     Deutsche almost certainly did <u>not</u> have legal possession of the Note at the time of the alleged foreclosure. Indymac FSB was the legal foreclosing entity, but they did not exist at the time of the foreclosure. Instead, OneWest Bank/Indymac Loan Services alleged that they foreclosed as late as November 17, 2009, one week after the November 10, 2009 date that Deutsche now claims in their post-petition allegations (in their unlawful detainer filing that

---

[8]  Wendel directly violated their contract with Peter Clark and Bar Rules by drafting and filing an avalanche of litigation against their client in the name of entities of which their client was, and alleges is, the highest authority, for the <u>stated</u> goal of "bankrupting Peter Clark," and then caused the conversion of Plaintiff's Chapter 13 reorganization to a Chapter 7 liquidation for the <u>stated</u> goal so they could "buy back (Mr. Clark's assets sing money that they have stolen form the trusts and entities that Mr. Clark hired them to protect" for next to nothing."

violated the automatic bankruptcy stay), that they foreclosed instead. at th the company that alleged that it held the , from the evidence, but that is another story. What is most relevant to this current Adversary action is Deutsche's alleged <u>post-petition</u> fraud in pretending to represent the legal title holder, wh

85)     From information and belief, Deutsche and OneWest entered into an agency relationship with each other to provide the illusion of a third party relationship for Deutsche to acquire unenforceable paper to provide the pretense of a third party "innocent" purchaser, and thus the illusion that Deutsche had rights not possessed by OneWest because they made a boneheaded move by liquidating Indymac (if they actually had enforceable paper before). The alleged goal of this transfer to defraud Plaintiff by asserting rights that they do not legally possess is transparent.

86)     Even if the Indymac Parties had the right to foreclose on Plaintiff's home and business address on October 20th, 2009, which is denied, the action that they engaged in alleging to transfer that right to Deutsche Bank is alleged to have been deceptive and/or fraudulent, and thus Defendants are precluded from moving forward with their unlawful detainer actions against Plaintiff (Case # CD10-0170) for this and other reasons, including defects in service and other breaches of civil process and /or law.

87)     <u>Even if Deutsche had the right to foreclose on Plaintiff's home and business address on October 22 or November  10th, 2009, and file suit against Mr. Clark for Unlawful Detainer and a Motion for Summary Judgment, which is denied, Deutsche has no standing; the Contra Costa Superior Court has no jurisdiction; and the action that Deutsche engaged in to prevent Mr. Clark from asserting a defense, including violations of federal authority and due process, is alleged to have been deceptive and/or fraudulent. Defendants are thus precluded from moving forward with enforcement of their unlawful detainer filing against Plaintiff (Case # CD10-0170) for this and other reasons, including defects in service and other breaches of civil process and /or law</u>

**Ex parte Young Injunction**

88)     "While a state may be immune under the Eleventh Amendment, individual state officials nonetheless may still be subject to federal injunctive relief from ongoing Bankruptcy Code violations. Before a state official actually has completed an act of wrongfully obtaining property, a debtor may be able to use an Ex parte Young injunction to enjoin the state official from

–24–

COMPLAINT

completing the seizure.(2324) An Ex parte Young injunction operates on the theory that an individual state official who is about to act or is acting in violation of federal law is not protected by the state's sovereign immunity. NBRC (National Bankruptcy Review Commission) State Sovereign Immunity In Bankruptcy After Seminole Tribe Of Florida V. Florida (http://govinfo.library.unt.edu/nbrc/report/20semino.html §B1)"

89)     Ex parte Young, 209 U.S. 123 (1908), is a United States Supreme Court case that allows suits in federal courts against officials acting on behalf of states of the union to proceed despite the State's Sovereign immunity, when the individual acted unconstitutionally. Young contended that he was merely acting for the state of Minnesota when he sought to enforce its laws. The Court disagreed, holding that when a state official does something that is unconstitutional, the official cannot possibly be doing it in the name of the state, because the Supremacy Clause of the Constitution means that the Constitution overrides all the laws of the states, invalidating any contrary laws. Therefore, when a state official attempts to enforce an unconstitutional law, that individual is stripped of his official character. He becomes merely another citizen who can constitutionally be brought before a court by a party seeking injunctive relief.

90)     The Declaration of Alan Kilpatrick filed and attached herewith shows that the Honorable Judge Mills acted in collusion with Deutsche to violate the Due Process clause of the Fourteenth Amendment and the federal authority of the bankruptcy court. A copy of the Supreme Court Ruling in Ex parte Young is provided as "EXIHBIT D"

"The Court, in laying out this doctrine, created two legal fictions:
    1. That such a suit is not against the state, but merely against the individual officer, who cannot be acting on behalf of the state when he enforces a law that is unconstitutional; and
    2. That an individual can be a state actor for Fourteenth Amendment purposes (which only prohibits unconstitutional act by the state, and those who represent it) while remaining a private person for sovereign immunity purposes.
As a consequence of Ex parte Young, Congress passed two important statutes:
    * § 28 U.S.C. § 2201 gives federal courts the power "to declare the rights and other legal relations of any interested party" and provides that "Any such declaration shall have the force and effect of a final judgment"; and
    * § 28 U.S.C. § 2202 states that "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party."
    The effect of § 2201 is to permit the federal courts to declare the rights of a party suing a state official (or any other party, but they were created with state officials in mind) without issuing an injunction against the official. This was thought to be more respectful of the states. However, if the court declares a statute to be unconstitutional, and the state official still prosecutes someone for violating the statute, then § 2202 takes effect, permitting the federal court to take action such as issuing an injunction and holding an official who violates that injunction in contempt.[9]

---

[9]  Justice Peckham, writing for the Court, had a series of issues to resolve. First, he concluded that there was federal question jurisdiction in Perkins (the parties were not completely diverse), identifying a number of issues of federal law raised in the proceeding. (19) He then turned to one of the merits

**PLAINTIFF ACTED IN GOOD FAITH AND DEFENDANTS HAVE NOT**

91)     Plaintiff acquired a loan in exchange for a note and deed of trust in or about 2005. In 2008, Plaintiff became unable to continue to make payments on his loan at the amount specified on the loan due to acts of third parties that are the subject of Binding Arbitration that is ongoing with the American Arbitration Association, Case # 74 194 Y 01440 07 JEMCO. Plaintiff has millions of dollars in assets which the Defendants in said arbitration case have tied up for the expressed goal of economic duress and the stated goal of Bankrupting Peter Clark so they can take his assets "for next to nothing."

92)     In or about September, 2008, Plaintiff applied to Indymac for loan modification and received a letter that he would receive a response in 30 days. Plaintiff never received the promised response.

93)     In July, 2008, the Governor signed into law SB 1137, which created California Civil Code 2923.5 and 2923.6. On of about July, 2009 Plaintiff presented to Indymac through ACORN Housing, a proposal for Defendants to act in accordance with this law.

94)     The Federal Deposit Insurance Corporation took over Indymac in 2008, which became subject to the policies of the Executive Branch of the United States regarding the reduction of foreclosures as part of ongoing economic stabilization.

---

questions: whether the penalties, designed to inhibit challenge to the rates through a defensive proceeding, were unconstitutional. He concluded that they were inconsistent with the requirements of due process because of the burden they placed on access to the courts. (20)

Having reached the merits first, perhaps to make the opinion more persuasive, Peckham turned to the question of the circuit court's jurisdiction in Perkins in light of sovereign immunity. He conducted a lengthy review of the Court's cases, (21) beginning with Chisholm v. Georgia (22) and continuing through more recent cases like Fitts v. McGhee, (23) on which Young had relied in drafting the Minnesota legislation.

After concluding that sovereign immunity did not block relief against Young, Peckham turned to another question raised by a request for an injunction: whether there was an adequate remedy at law. The railroads' remedy at law, the Court assumed, would be to assert a defense in an enforcement proceeding.

> It is further objected that there is a plain and adequate remedy
> at law open to the complainants and that a court of equity,
> therefore, has no jurisdiction in such case. It has been suggested
> that the proper way to test the constitutionality of the act is to
> disobey it, at least once, after which the company might obey the
> act pending subsequent proceedings to test its validity. (24)

But a single violation might or might not be punished, and in any event the criminal penalties would make it hard to find anyone prepared to commit the violation (just as Young had intended). (25) Moreover, the constitutional question, involving intricate facts of corporate accounting, would be hard to explain to a jury in defense in a prosecution. Much better to let the whole thing come to equity, so the remedy at law was not adequate. (26)

Concluding that Young was properly in custody because the circuit court's injunction was proper, the Court denied relief on habeas. [http://www.highbeam.com/doc/1G1-177871506.html]

95)   In November, 2008, Barak Obama was elected President of the United States and enacted executive policies to minimize foreclosures. One West, in purchasing Indymac from the FDIC, became subject to said federal executive policies in addition to relevant California law such as California Civil Code 2923.5 and 2923.6, the Foreclosure Prevention Act, and the implied covenant of good faith and fair dealings.

96)   Indymac antecedent OneWest alleged that they began foreclosure proceedings in the name of Indymac in or about December, 2008, but is alleged to have failed to follow the procedures proscribed by law, including regarding service of Notice of the foreclosure sale (and Deutsche for the unlawful detainer).

97)   In or about April, 2009, Plaintiff engaged the services of ACORN Housing to pursue loan modification with Indymac. Plaintiff believed, and believes, that ACORN's policies regarding loan modification are closest to those of President Obama of any other group. ACORN assured Plaintiff that they have a higher level of access to the then secret "Indymac investors," regarding loan modification negotiations than Plaintiff would have as an individual, and Plaintiff has reason to believe that this is true.

98)   ACORN worked with Plaintiff to insure that Plaintiff supplied all materials necessary for Indymac to complete the loan modification process, with updates as required from time-to-time. Plaintiff was told that the modification was being reviewed, and such modification was never denied.

99)   Plaintiff became alarmed in the weeks leading up to the foreclosure date of August 4, 2009. Plaintiff called Indymac directly, only to find that the retail side of Indymac was separate from the part that was in discussion with ACORN. Plaintiff worked diligently to insure that the files on the retail side reflected the documents that Plaintiff had submitted through ACORN. Indymac assured Plaintiff that these files had been  brought together, however Indymac did not stop the foreclosure date.

100)   Plaintiff filed for bankruptcy on August 3, 2009, the day prior to the scheduled foreclosure. Plaintiff made sure that Indymac, and the trustee, was aware of Plaintiff's bankruptcy. After filing, Plaintiff was informed that Indymac cancelled the foreclosure date.

101)   Plaintiff learned that during his bankruptcy he would be expected to continue to make payment on the loan at the higher, pre-loan modification rate that Plaintiff could not afford, and which needed to be modified.  As a result, Plaintiff believed that his bankruptcy plan would be rejected because such a high percentage of Plaintiff's income would have to be dedicated to payments to Indymac, that Plaintiff could not afford to make any payments on other debts that are the direct and proximate result of acts by the Defendants of Plaintiff's previously referenced Binding Arbitration.

102)   Plaintiff thus realized that loan modification was required prior to the Bankruptcy Court approving a plan.

COMPLAINT

103) Plaintiff called Indymac during the bankruptcy, and Indymac reported that that they had ceased processing the loan modification, and by law could not resume said modification until Plaintiff was out of bankruptcy. Plaintiff has since learned that Indymac's statement was false, because it could have been accomplished as part of a re-affirmation of the debt. However Plaintiff did not know this at the time. Plaintiff thus relied on said false statement by Indymac to Plaintiff's detriment.

104) In September, 2009, Defendants assured Plaintiff that no foreclosure was scheduled, and that they would resume the loan modification process as soon as Plaintiff was out of bankruptcy. Once again, Plaintiff relied on Defendant's statements to his detriment, and has been damaged thereby.

105) Plaintiff's bankruptcy was dismissed on a technicality, and Plaintiff was free to re-file for bankruptcy because Plaintiff had fixed the technical problem within days of his filing for bankruptcy, however Plaintiff, in relying on Defendant's false and self-serving statements regarding the need to be out of bankruptcy, believed that he had to complete the loan modification and establish an affordable payment schedule prior to going back into bankruptcy to re-organize the remainder of his debts in the mutual interest of legitimate debtors, including Indymac, and Plaintiff.

106) Plaintiff thus asked Indymac if they would process the loan modification if he would remain out of bankruptcy to complete the loan modification process. Indymac representatives stated that they would, but needed proof that Plaintiff was out of bankruptcy. Plaintiff supplied said proof by fax to Indymac, together with a request that Indymac complete the loan modification process. Indymac agreed to do so, and verified that in a phone call on October 13, 2009.

107) Defendants blindsided Plaintiff by re-scheduling, and completing, the foreclosure of Plaintiff's home in secret one week later (October 20th). Defendants kept said foreclosure process secret not only from Plaintiff, but also from the holder of the second deed of trust, who alleges that he never received any notice of foreclosure sale (See declaration of Alan Kilpatrick). Plaintiff alleges that Indymac has engaged in deceptive and unfair business practices to defraud Plaintiff of possession of his home during the time of Plaintiff's business re-organization required as a direct and proximate result of malfeasant acts by the Defendants in the previously referenced Binding Arbitration.

108) Plaintiff acted in good faith at all times related to the loan modification, and Indymac did not.

**Deception and Undue Influence**

109) Those in Agency relationship with Deutsche used economic duress regarding the high payments required by Plaintiff's unmodified loan to force Plaintiff to remain out of bankruptcy in order to fix the problem by the loan modification that it now appears Defendants had no intention of granting.

110)     In the capacity as alleged Note Holder, Indymac and OneWest deceived Plaintiff with promises to move Plaintiff's loan modification forward, and other deception.

111)     In said capacity as alleged Note Holder, Defendants exercised undue influence over Plaintiff to cause Plaintiff to come out of bankruptcy protection to complete the loan modification process.

112)     Defendants' deception and apparent violations of the implied covenant of good faith and fair dealings in their relations with Plaintiff is particularly egregious because Indymac had previously informed Plaintiff that:

a.  No foreclosure was scheduled

b.  Plaintiff had to get out of bankruptcy prior to completing the loan modification process begun with Indymac many months before, which process appeared to be nearly completed.

c.  Indymac had previously indicated that all that remained to complete the loan modification was Plaintiff showing the increased income that he was able to prove prior to his having to step into bankruptcy to prevent the foreclosure in the interim. Plaintiff showed that income, and thereafter, Plaintiff was able to show twice as much income.

d.  Plaintiff's bankruptcy was dismissed without discharge for a technical reason that Plaintiff had already fixed, allowing Plaintiff to make a clean re-filing. however Plaintiff chose not to do so specifically because of the representations by Indymac that would have allowed Plaintiff's bankruptcy plan to succeed, something that did not appear possible in the absence of loan modification.

e.  Such representations by Indymac included a telephone call to Plaintiff on the 13th of October by a representative of Indymac requesting additional information that Plaintiff supplied the next day (one week after Indymac had secretly re-scheduled the foreclosure, and a week before they completed the foreclosure, also in secret from Plaintiff.)

113)     Thus, Plaintiff relied on the false and/or misleading statements by Indymac to Plaintiff's detriment, including the telephone call on October 13th.

114)     Plaintiff has suffered damages as a result of his reliance on Defendants' misrepresentations.

115)     Plaintiff informed Indymac of ways they could mitigate the damages, however Indymac has refused, and continues to refuse, to do so.

116)     Completing the loan modification was a high priority for Plaintiff for the above stated and other reasons:

a. Plaintiff's home is more value to Plaintiff than it would be to Defendants on the open market, including because Plaintiff's office and shop area is in a detached garage on the same property. The house next door is for sale, and has been vacant for months.

b. Plaintiff has numerous business opportunities, and needs to concentrate on re-starting his business at this time, which business has been placed on hold as a result of the acts of third parties that are in binding arbitration. Plaintiff cannot focus on restarting his business while being distracted by the loss of his home, shop, and office.

117) Defendants were precluded from their foreclosure by the automatic stay in the bankruptcy, and thus deceived Plaintiff to step out of bankruptcy protection rather than completing a loan modification as part of a re-affirmation of the debt in Plaintiff's bankruptcy under the oversight of the bankruptcy trustee, as now appears to be federal policy in keeping with the stated executive goals of the Obama Administration in the absence of action by the United States Congress.

118) In failing to proceed with the loan modification as a re-affirmation in the bankruptcy and in proceeding in the foreclosure of the property of the Debtor, Defendants created a minefield of problems, while counting on the fact that the economic dress that Plaintiff faces will prevent him from protecting his rights and the public interest in reversing the foreclosure.

119) As a result, an actual controversy has arisen and now exists between the Plaintiff and the Defendants concerning their respective rights regarding Defendant's secret foreclosure proceeding while stating to Plaintiff that they were actively engaged in loan modification.

**Deutsche has Engaged in a Pattern of Fraud**

120) Our society has placed lenders in a position of trust by providing them with special, expedited legal processes whenever their agents proclaim by fiat that they have complied with all legal requirements to take ownership of their client's property, however it appears that said agents have succumbed to the same pressures as the overseers of undersea oil drilling in failing to act in keeping with the public trust, as delineated further herein. According to rulings of State and Federal Judges since 2007, Defendants have engaged in a pattern of violations of that trust by engaging in numerous violations of state and federal law, first related to their sub-prime loans, and second by their "eviction mill" process to evict their clients from their homes without taking the actual legal steps for actual ownership, without complying with notice requirements, and, as now demonstrated by their violations of federal authority and due process.

121) By purchasing Indymac and its portfolio of loans from the Federal Government at a steep discount that anticipated the loan modifications that would have to be enacted, OneWest became the beneficiary of the profits that Deutsche is now attempting to extract by allegedly illegal means on their behalf. However the evidence indicates that Indymac's portfolio is, to a large extent, worthless. This is alleged because the evidence indicates that Indymac generally did not acquire, or transfer, actual legal rights related to said portfolio, but merely the electronic representation of rights that they never

possessed[10]. In addition, OneWest liquidated Indymac without transferring the assets in an apparent attempt to evade the taxes on the capital gain from their purchase of the discounted notes. The evidence indicates that Deutsche is now acting contrary to public policy to exacerbate the problem that One West was supposed to resolve.

122)    The evidence indicates that Deutsche has acted in an agency relationship and/or in conspiracy with One West in engaging in the acts and omissions complained about herein, and the scope of this agency relationship and/or conspiracy will be delineated by reasonable discovery.

123)    During the debate about bailing-out the banks, Congress decided that non-US banks should not be getting TARP funds. From information and belief, of the $50 billion the Feds have given to AIG's counter-parties, Deutsche Bank is alleged to have received $6 billion, contrary to the intent of Congress. If, in fact, the reason that Deutsche never incorporated was to evade American taxes, then the $6 Billion in Bailout money would appear to be doubly egregious.

124)    From information and belief on October 22, 2009, Real Estate Broker/Agent Rebecca "Williams" came to the premises of Unit "B" and informed tenant Mary Bauer that a foreclosure had occurred on October 20th, 2009, and that Indymac had taken possession of the property by nature of said foreclosure. Ms. Williams is alleged to have informed Mary Bauer that she had sixty days to vacate the premises. Mary Bauer then informed Plaintiff, Peter Clark of said visit and said alleged foreclosure.

125)    Upon hearing the allegation that a foreclosure had taken place, Peter Clark immediately called Indymac, with whom Mr. Clark was actively engaged in loan modification at the time. Indymac confirmed that the property was an "REO" (real estate owned) of the bank, and that Indymac had taken the property in a foreclosure action on October 20, 2009, when no third party came forward to purchase the property at the Trustee sale. Indymac verified said alleged "fact" in a letter to Plaintiff dated November 17, 2009.

126)    For its alleged innocent purchaser status, Deutsche now infers that it purchased the Note and Deed of Trust from Indymac sometime after October 20th and before the end of November 10th, 2009, and did not foreclose until said November 10th date. Plaintiff did not learn of this allegation until receiving a copy of an unlawful detainer action against him in or about March 11, 2010. Deutsche also infers that it mad the switch five years ago, inferring that Indymac has engaged in fraudulent misrepresentation for the duration.

127)    Either way OneWest's previous representation that the property/deed was foreclosed on October 20, 2009 constituted fraudulent misrepresentation regarding what Deutsche now alleges. Plaintiff relied

---

[10]    While virtually all of the major banks in this state have recognized their responsibility and have created loan modification programs that have been approved by the commissioner in keeping with the intent of the Foreclosure Prevention Act, Indymac and OneWest are a notable exception.

on Deutsche's misrepresentations in October and thereafter to his detriment, and has been damaged thereby in an amount to be ascertained at trial.

128)     The date of Correspondence from Indymac/One West, November 17, 2009, is nearly one month AFTER Defendants first alleged that they had acted in secret to foreclose on Plaintiff's home while pretending to be in active loan modification negotiations, and one week after they now allege that they foreclosed on November 10th.  Up until this November 17th letter, Defendants repeatedly acknowledged to Plaintiff that they had received all of the necessary documentation for loan modification review, and were actively pursuing said loan modification.

**129)**     Deutsche and One West are both alleged to have lacked standing to engage in a foreclosure action. Regardless of such lack of standing, acting in agency relationship with each other, they are alleged to have taken advantage of their position of trust by fraudulent misrepresentations in violation of the Covenant of Good Faith and Fair Dealings as a key element of their failure to act responsibly in keeping with banking regulations, law, and the intent of the California Legislature and the Obama Administration, and now hold the property of Plaintiff in Constructive Trust due to their deceptive business practices and violations of law.

130)     A further actual controversy has arisen related to the secretive dealings between the Indymac Parties and Deutsche Bank related to their now alleged foreclosure proceedings on November 10, three weeks after Indymac's previously alleged foreclosure proceedings on October 20, 2009. In all cases there is a question of standing. ***In re Foreclosure Cases*** Judge Boyko ordered Deutsche Bank to produce evidence of standing, but the copies of notes and mortgages Deutsche Bank included with its filings don't show ultimate endorsement/assignment to Deutsche Bank. Judge ordered Deutsche Bank to fix this. Deutsche Bank did so by having its attorneys draft after-the-fact assignments, undoubtedly because nobody could find the original assignments. It appears this angered Judge Boyko.

131)     As in the current case, Deutsche Bank alleges that it was acting as "Trustee" for "securitization pools." But the evidence indicates that the Trustee never got the legal document known as the mortgage. Judge Boyko ordered Deutsche Bank to prove they were the owners of the mortgages or notes, and they could not, as in the current situation. Deutsche Bank could only argue that the banks had foreclosed on such cases for years without challenge. <u>The Judge then declared that the banks "seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test,"</u> the Judge concluded, *<u>"their weak legal arguments compel the court to stop them at the gate."</u>*

132)     With *"in re Foreclosure Cases"* there was never a question that the loans weren't legally sold or assigned to Deutsche Bank. In Ohio, it appears that the question related solely to the arrogance and

compliance. Finally put to the test," the Judge concluded, *"their weak legal arguments compel the court to stop them at the gate."*

132)    With *"in re Foreclosure Cases"* there was never a question that the loans weren't legally sold or assigned to Deutsche Bank. In Ohio, it appears that the question related solely to the arrogance and audacity of a lender telling a judge to ignore its sloppy paperwork and just get on with a foreclosure. The Judge chose to act by law instead. Here there are added questions related to the two alleged foreclosure dates (October 20 and November 10, 2009).

133)    Plaintiff respectfully requests that this court also act according to law by ordering a voidance of Defendants' alleged foreclosure actions in keeping with the ruling of the Federal Court as well as California and other State Courts related to alleged foreclosures accomplished without actual standing, and nullification of the alleged rights of Defendants related to the subject property which they have abused by their fraudulent acts and/or other violations of law and/or public policy which, the evidence indicates Defendants were engaged in to slough over and conceal their apparent lack of standing.

## PRAYER FOR RELIEF
### First Cause of Action- (Fraud)
### (Against Deutsche Bank National Trust Company)

Plaintiff re-alleges paragraphs 1 through 133 hereinabove and all other paragraphs hereinafter as though fully set forth herein.  Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs
¶¶5-15, Parties, Agency, and Jurisdiction;
¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;
¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;
¶¶29-43, Deutsche Refuses to Meet & Confer RE: Abandonment of Asset by Trustee [11 USC §554];
¶¶ 44-50, Background Violations of Law;
¶¶ 51-73Further Violations of Law;
¶74, Deutsche's Lack Of Standing and Violations of Due Process;
¶¶ 75-87, Declaratory Relief Required;
¶¶88-90, Ex parte Young Injunction;
¶¶ 91-108, Plaintiff Acted In Good Faith And Defendants Have Not;
¶¶109-119, Deception and Undue Influence;
¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

134)    By the acts set forth above, Defendants have made material representations regarding their alleged standing and capacity and/or about their foreclosing on the Subject Property on October 20th or November 10, 2009, and/or related to the jurisdiction of the Bankruptcy Court and the Bankruptcy act after Plaintiffs filing for bankruptcy, including to this court, which

–33–

COMPLAINT

statements are false, and when said representations were made, Defendants knew these representations were false or made them recklessly without any knowledge of the truth or in callus disregard thereof, and as a positive assertion; Defendants made the representation with the intent that Plaintiff should act upon said assertions.  In so doing they are alleged to have violated the Fair Debt Collection Practices Act, Title 15  Chapter 41  Subchapter V  § 1692 Subchapter V—Debt Collection Practices § 1692e. False or misleading representations; § 1692f. Unfair practices.

135)      Plaintiff acted in reliance on Defendant-s representation and thereby suffered injury in an amount to be ascertained at trial.

Wherefore, Plaintiff prays for relief according to proof.

    a.   That this action be tried in front of a jury.

    b.   For an award of reasonable attorneys' fees.

    c.   For an award to Plaintiff of costs of suit incurred herein on all causes of action;

    d.   Such other and further relief as the court shall deem just and proper.

## SECOND Cause Of Action (Declaration of Constructive Trust)

## (Against All Defendants)

136)   Plaintiff re-alleges paragraphs 1 through 135 hereinabove and all other paragraphs hereinafter as though fully set forth herein.  Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs:

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;
¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;
¶¶ 51-73 Further Violations of Law;
¶74, Deutsche's Lack Of Standing and Violations of Due Process;
¶¶ 75-87, Declaratory Relief Required;
¶¶88-90, Ex parte Young Injunction;
¶¶109-119, Deception and Undue Influence;
¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

137)   By virtue of the acts set forth in the re-alleged paragraphs herein, defendants, and each of them, took on the responsibilities of the constructive trust represented by their position as

-34-

COMPLAINT

electronic note-holders and alleged successors at interest without the de jure right to foreclose, and without possessing the actual notes. By acting without actual standing in acting to evict the Plaintiff, Defendants have been unjustly enriched. By virtue of this unjust enrichment, defendants, and each of them, have become constructive trustees of Peter Clark's home, office, and shop, for the benefit of Peter Clark.

138)    It is therefore necessary that this Court compel Defendants, and each of them, to reverse the foreclosure and for the Court to impose upon Defendants, and each of them, the duties and responsibilities of Constructive Trustees. It is also therefore necessary that this Court (a) make an order declaring that defendants, and each of them, hold said interest in the real and personal property held by defendants in trust for Peter Clark, and (b) order a re-conveyance of all such real and personal property held by defendants, and each of them, to Peter Clark.

139)    As a further proximate result of the common allegations set forth herein, Plaintiff has been forced to act as his own attorney and/or to hire attorneys to protect his rights, and has incurred and continues to incur costs, loss of income, and/or attorneys' fees.

Wherefore, Plaintiff prays for relief according to proof as set forth hereinafter.

  a. That this action be tried before a jury;

  b. For general property damages according to proof;

  c. For general personal injury damages according to proof;

  d. For punitive damages;

  e. For an award of reasonable attorneys' fees.

  f. For an award to Plaintiff of costs of suit incurred herein on all causes of action;

  g. Such other and further relief as the court shall deem just and proper.

### THIRD CAUSE OF ACTION – DECLARATORY RELIEF
### Against DEUTSCHE BANK

140)      Peter Clark re-alleges paragraphs 1 through 139 hereinabove and all other paragraphs hereinafter as though fully set forth herein. Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs:

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;

¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;

¶¶ 51-73Further Violations of Law;

¶74, Deutsche's Lack Of Standing and Violations of Due Process;

¶¶ 75-87, Declaratory Relief Required;

141)      An actual controversy has arisen and continues between Peter and Deutsche designated in this cause of action over Deutsche's claim that they received title to the home of Peter Clark by an act that is void by collateral estoppels, and regarding Deutsche's standing and authority.

142)      This controversy is centered upon the following:

a.      Does Deutsche have the authority and/or legal right to act in the place of a court of law to make the ruling of law that they are a bona fide third party purchaser of the Note and Deed of Trust on Peter Clark's home of 30 years without providing foundation for such a claim, such as evidence of consideration, the contractual agreements, or other documents or declarations?

b.      Does Bruce Mills have the right to decide issues that are within the jurisdiction of the bankruptcy trustee without due process, and thus violate the civil rights of a debtor?

c.      Does Deutsche have the authority and/or legal right to act in the place of the bankruptcy court by representing to the Contra Costa Superior Court that a bankruptcy trustee can abandon an asset without an order from the Bankruptcy Judge despite the requirements of law, and/or that a relief from stay alone releases an asset from the Authority of the Bankruptcy Court?

d.      Does Deutsche have the legal right to engage in extensive ex parte communications with the Judge of the Contra Costa Superior Court that appears to a third party to constitute collusion all outside of the presence of opposing counsel?

e.      Does Deutsche have the authority and/or legal right to act during the automatic bankruptcy stay of Debtor, Peter Clark without first receiving a relief from stay from the Bankruptcy Court in Peter Clark's Bankruptcy?

143)     Mr. Clark desires a judicial determination and declaration of Mr. Clark 's and the defendants' respective rights and duties under all of the agreements between the parties regarding the subject property.

144)     The declaration is necessary and appropriate at this time, so that Mr. Clark can determine his rights, obligations and duties under said agreements.  Without such declaration Mr. Clark will face the burden of loss of use of property and attendant benefits caused by the unsettled state of affairs resulting from different interpretations of agreements, and other remedies are and would be inadequate. These circumstances include the loss of Mr. Clark's home, office, and workshop, and the loss of Mr. Clark's way of life.

WHEREFORE, Plaintiff prays for relief according to proof as set forth hereinafter and for judgment against Defendants and each of them, as follows

A.     For an order that the acts of Deutsche that were accomplished after Peter Clark's bankruptcy  related to the Note and Deed of Trust secured by the Subject Premises without notice to, much less approval by the Bankruptcy trustee a relief from stay from the bankruptcy Court and abandonment of the asset by the Trustee are void in accordance with law and public policy.

B. For a declaration that the Note and Deed of Trust is void, together with all collection efforts, and a declaration that Deutsche has no standing related to Peter Clark's Bankruptcy proceedings.

C.     For damages, costs of suits, and defense of suits incurred; an

D.     For such other and further relief as the court may deem proper.

**FOURTH Cause Of Action**
**(Violations of Business and Professions Code Section 17200)**

145)     Peter re-alleges paragraphs 1 through 144 hereinabove and all other paragraphs hereinafter as though fully set forth herein. Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs:

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;
¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;
¶¶ 51-73Further Violations of Law;
¶74, Deutsche's Lack Of Standing and Violations of Due Process;
¶¶ 75-87, Declaratory Relief Required;

-37-

COMPLAINT

¶¶109-119, Deception and Undue Influence;
¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

146)    By virtue of the terms of the agreements determined by public policy set forth above in the incorporated paragraphs, there existed between Peter, on the one hand, and Deutsche Bank, Indymac and OneWest and each of them, on the other hand, a relationship of trust and confidence giving rise to a fiduciary duty in each of these defendants in their capacity as lenders during an economic emergency, to deal with Peter Clark, with the utmost good faith, honesty and integrity, based upon the special trust placed by the American public and by Peter Clark, in these defendants and other lenders, as shown by policies related to summary proceedings in unlawful detainer and foreclosure which border on a violation of due process even when the letter of the law is adhered to, and the Moving Party is not engaged in deceptive business practices. Without honesty and integrity, and where those placed in such trust exceed their authority of law for expedience or to squeeze windfall profits, the balance is tipped past the point of violation of due process and thus civil rights or those at the receiving end of the summary proceedings.

147)    In enacting California Civil Code 2923.5, 2923.6, and the Foreclosure Prevention Act, it was the clear intent of the California Legislature to reduce the number of foreclosures in this state by requiring good faith efforts by the lenders to engage in loan modification.

148)    The United State Congress did not take action to require Bankruptcy Judges to force loan modification, however. Thus, when Defendants reported that they would complete the loan modification once the bankruptcy proceedings were halted, Plaintiff acted in accordance with Defendant's directives to Plaintiff's detriment.

149)    In inducing Plaintiff to take actions that have caused the damages at issue herein, Indymac's and One West's pre-petition conduct as described herein constitutes unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code Section 17200 et seq. Those acts by Indymac and One West's were

pre-petition, however, and the subject of pre-petition litigation which the case trustee has agreed to abandon, however the court has not yet abandoned it.

150)   By acting post-petition in an agency relationship with the One West Parties, Deutsche Bank become a full Party to fraud, and fully liable for the damages. Deutsche is not listed as a party to the pre-petition litigation. Deutsche Banks' actions are post-petition, and thus the subject of this instant action.

151)   Peter Clark is entitled to restitution of all gains, benefits, fees and monies obtained by Defendants from the wrongful conduct alleged above in an amount according to proof.

152)   As a proximate result of these actions by defendant Deutsche Bank, and Peter's reliance thereon, Peter Clark has been damaged as more fully described herein in an amount that can be mitigated by actions of this court, and thus which must be ascertained in a final accounting at trial.

153)   In doing the post petition actions herein alleged, Deutsche Bank acted with oppression, fraud, malice, reckless disregard of Peter Clark's rights and the consequences that they might suffer, and with the intent to injure Peter Clark in his financial and personal interests, and Peter is therefore entitled to recover punitive damages from these defendants, and each of them, for the commission by each of them of this tort.

154)   As a further proximate result of the activities set forth herein related to Deutsche Bank's, unlawful activities in violation of Business and Profession Code Section 17200, Peter Clark has incurred and continues to incur substantial time dedicated to these cases and/or attorneys' fees.

Wherefore, Peter prays for relief according to proof as set forth hereinafter.

       (a) That this action be tried before a jury;

       (b) For general property damages according to proof;

       (c) For general personal injury damages according to proof;

       (d) For double damages as allowed by law

       (e) For punitive damages;

       (f) For an award of reasonable attorneys' fees.

       (g) For an award to Peter of costs of suit incurred herein on all causes of action;

       (h) Such other and further relief as the court shall deem just and proper.

### Fifth Cause Of Action
### INJUNCTIVE RELIEF- Ex parte Young

155)   Plaintiff re-alleges paragraphs 1 through 154 hereinabove and all other paragraphs

hereinafter as though fully set forth herein.  Plaintiff in particular, reference this cause of

action, directs the parties to re-alleged Paragraphs

¶¶88-90, Ex parte Young Injunction, as well as

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;

¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;

¶¶ 51-73Further Violations of Law;

¶74, Deutsche's Lack Of Standing and Violations of Due Process;

¶¶ 75-87, Declaratory Relief Required;

¶¶109-119, Deception and Undue Influence;

¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.


156)      The Declaration of Alan Kilpatrick filed and attached herewith and other evidence shows

that the Honorable Bruce Mills acted in collusion with Deutsche in violation of the Due Process

clause of the Fourteenth Amendment and the federal authority of the bankruptcy court and the

Bankruptcy Act, and thus for which Bruce Mills had no jurisdiction as a judge of the Superior

Court. The evidence indicates that in so doing, the Honorable Bruce Mills acted as an individual

outside of his capacity as a judge of the Superior Court of California in collusion with Deutsche

Bank National Trust Company.

157)      In so doing, Bruce Mills is acting unconstitutionally and in violation of federal law, and is

thus not protected by the state's sovereign immunity. As such, Bruce Mills is subject to federal

injunctive relief for ongoing violations. These acts have not been completed, and can be

mitigated by a voluntary act of Bruce Mills or injunctive relief by this court, however because the

litigation is part of the trust estate under the jurisdiction of the case trustee, Peter Clark has no

other recourse than through this court via an Ex parte Young injunction to this court to enjoin

Bruce Mills from completing the seizure, and to reverse the wrongfully act of Defendants

obtaining property for which the debtor retains a claim through a pre-petition filing against

Indymac and One West Bank which the bankruptcy court has not yet ordered the trustee to

abandon.

As a consequence of Ex parte Young, Congress passed two important statutes:
   * § 28 U.S.C. § 2201 gives federal courts the power "to declare the rights and other legal relations of any interested party" and provides that "Any such declaration shall have the force and effect of a final judgment"; and
   * <u>§ 28 U.S.C. § 2202 states that "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party."</u>

These acts have not been completed, and can be mitigated by a voluntary act of Bruce Mills or injunctive relief by this court, however because the litigation is part of the trust estate under the jurisdiction of the case trustee, Peter Clark has no other recourse than through this court via an Ex parte Young injunction to this court to enjoin Bruce Mills from completing the seizure, and to reverse the wrongfully act of Defendants obtaining property for which the debtor retains a claim through a pre-petition filing against Indymac and One West Bank which the bankruptcy court has not yet ordered the trustee to abandon.

The effect of § 2201 is to permit the federal courts to declare the rights of a party suing a state official (or any other party, but they were created with state officials in mind) without issuing an injunction against the official. This was thought to be more respectful of the states. However, if the court declares a statute to be unconstitutional, and the state official still prosecutes someone for violating the statute, then § 2202 takes effect, permitting the federal court to take action such as issuing an injunction and holding an official who violates that injunction in contempt

Wherefore, Peter prays for relief according to proof as set forth hereinafter.

- For injunctive relief
- "to declare the rights and other legal relations of any interested party" and provide that "Any such declaration shall have the force and effect of a final judgment"; and
- <u>"Further necessary or proper relief based on a declaratory judgment or decree</u>
- Such other and further relief as the court shall deem just and proper.

### SIXTH CAUSE OF ACTION –
### VIOLATIONS OF BUSINESS AND PROFESSIONS CODE Section 17200

158)     Mr. Clark re-alleges paragraphs 1 through 157 hereinabove and all other paragraphs hereinafter as though fully set forth herein. Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;
¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;
¶¶ 51-73Further Violations of Law;
¶74, Deutsche's Lack Of Standing and Violations of Due Process;
¶¶ 75-87, Declaratory Relief Required;
¶¶88-90, Ex parte Young Injunction;
¶¶109-119, Deception and Undue Influence;
¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

159)     Deutsche engaged in misrepresentation, concealment, and other deceptive practices and then violated bankruptcy laws and filed litigation against Mr. Clark during the time of the automatic stay of Mr. Clark's bankruptcy as a key element of their damaging acts as described herein. This constitutes unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code Section 17200 et seq.. Said violations of law have caused economic duress to Mr. Clark. As a proximate result of these actions by Respondents, and each of them, and Mr. Clark's reliance thereon, Peter has been damaged as more fully described above in an amount to be ascertained at trial.

160)     Mr. Clark is entitled to restitution of all gains, benefits, fees and monies obtained by Respondents from the wrongful conduct alleged above in an amount according to proof.

161)     In doing the actions herein, Respondents, and each of them, acted with oppression, fraud, malice, reckless disregard of Mr. Clark 's rights and the consequences that they might suffer, and with the intent to injure Mr. Clark in his financial and personal interests and the interests of intended beneficiaries, who are therefore entitled to recover punitive damages from these Respondents, and each of them, for the commission by each of them of this tort.

Wherefore, Peter prays for, costs of suits and defense of suits incurred; For damages for loss of income and business advantage that could reasonably be imputed for the delays in the prosecution of Mr. Clark's claims;

For double damages, and other relief according to proof as set forth hereinafter; and

For such other and further relief as the court may deem proper.

COMPLAINT

## RICO CLAIMS

### SEVENTH CAUSE OF ACTION
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT- 18 U.S.C. § 1962(c)

162)   Mr. Clark re-alleges paragraphs 1 through 161 hereinabove and all other paragraphs hereinafter as though fully set forth herein. Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs

¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;

¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;

¶¶ 51-73Further Violations of Law;

¶74, Deutsche's Lack Of Standing and Violations of Due Process;

¶ 75-87, Declaratory Relief Required;

¶¶88-90, Ex parte Young Injunction;

¶¶109-119, Deception and Undue Influence;

¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

163)   At all relevant times, Deutsche Bank and its agency relationships with the OneWest Parties constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

(a)   David Bryant, William P. Kinsey, A. Ron Evangelista, George Carasco, Jeffrey Hill, and Louis Schofield are individual "persons," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

(b)   Between April, 2007and November, 2009, Respondents conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of "Kinsey Investment Club" through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Respondent's pattern of racketeering activity consisted of:

(i)   Designing the Bryant's Notes to cause disproportionate damages to Petitioner.

(ii)   Use of extortion to induce Petitioner to sign said Bryant's Notes.

(iii)   economic duress by failing to deliver on Respondent's promise through Bryant of consideration in exchange for the Bryant's Notes and/or further extortion via economic duress and under the color of law provided by their abuse of process. Said acts of extortion were in violation of 18 U.S.C. § 1951;

(iv)   intimidation and threatens to corruptly persuade Peter Clark, or attempts to do so, or engage in misleading conduct toward Peter Clark, with intent to influence, delay, dissuade, or prevent Peter from acting in keeping with Peter's agreement

(v) a scheme to defraud by economic duress facilitated by litigation filed during the time of Bryant's bankruptcy in violation of federal law that was knowingly and intentionally devised by Respondents to obtain Peter Clark's money or property by means of false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Respondents placed or foreseeably caused to be placed in a post office, or authorized depository for mail, matter that furthered the scheme to defraud, including but not limited to pleadings and other papers related to

their litigation, whether or not filed with the Superior court with allegation that they knew to be false, as memorialized by the proof-of-service as a key element of their fraud.

164)     With each of the filings by Respondents with the Superior Court of California and to this court related to lawsuits and motions that Respondents have prosecuted against Mr. Clark for the demonstrated goal of bankrupting Peter and for the larger alleged goal of economic duress and financial elder abuse described throughout these pleadings. Respondents committed mail fraud, in violation of 18 U.S.C § 1341, each time they used or foreseeably caused the mails to be used to distribute the above described materials.

(vi)     using the mail or any facility in interstate or foreign commerce with intent to distribute the proceeds of extortion or otherwise promote, manage, establish, or carry on a scheme to extort and thereafter performed or attempted to perform said acts, including in filing and mailing pleadings related to litigation against Peter Clark filed during the time of David Bryant's Bankruptcy for the purpose of causing economic duress in violation of 18 U.S.C. § 1952.

165)     These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

(in alternative)
### EIGHTH CAUSE OF ACTION
### Racketeer Influenced And Corrupt Organizations Act 18 U.S.C. § 1962(d)
### (Conspiracy)- All Respondents

166)     Mr. Clark re-alleges paragraphs 1 through 165 hereinabove and all other paragraphs hereinafter as though fully set forth herein. Plaintiff in particular, reference this cause of action, directs the parties to re-alleged Paragraphs
¶¶ 16-24 Synopsis of Pre-Petition Events Leading to Post Petition Damaging Acts;
¶¶ 25- 28, Post Petition Violations of Federal Authority and Due Process;
¶ 51-73Further Violations of Law;
¶74, Deutsche's Lack Of Standing and Violations of Due Process;
¶¶ 75-87, Declaratory Relief Required;
¶¶88-90, Ex parte Young Injunction;
¶¶109-119, Deception and Undue Influence;
¶¶ 120-133, Deutsche has Engaged in a Pattern of Fraud.

167)     At all relevant times, "The Kinsey Parties" Investment Club and its endeavors constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

168)      In the alternative to the Sixth Cause of Action, The Kinsey Parties and their agents/alleged clients/alleged co-conspirators conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the Investment Club enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).  Respondents intended to further their endeavor that, if completed, would satisfy all of the elements of a substantive RICO criminal offense adopted the goal of furthering or facilitating the criminal endeavor.  In particular, prior to December 2009, Bryant was not acting within the scope of his employment when he engaged with Kinsey Party lawyer Dave Delehant to create Bryant's Notes in a manner that would cause the maximum damages to Petitioners, or when Bryant provided false and/or misleading information to the Sacramento bankruptcy court or Schofield provided false information to his bankruptcy court related to the attorney client privileged documents that were part of Respondent's extortion.

169)      Peter Clark and others were injured by Respondents' overt acts in furtherance of Respondents; illegal scheme and said overt acts were acts of racketeering or otherwise unlawful under the RICO statute:

(a) A scheme to defraud (see supra ¶¶ 30-68) that was knowingly and intentionally devised by Bryant and then Kinsey Party attorney Dave Delehant to defraud Peter Clark by means of extortion, failure of consideration, and false or fraudulent pretenses, representations, or promises; and, for the purpose of executing such scheme, Respondents and others have placed or foreseeably caused to be placed in a post office, or authorized depository for mail, matter that furthered the scheme to defraud (including but not limited to all pleadings in the their case in Contra Costa County filed during Bryant's bankruptcy in violation of the automatic bankruptcy stay; and threats to and actual disclosure of attorney-client privileged documents during a time when Petitioner was unable to enjoin Respondent Bryant or otherwise restrain Bryant from his damaging acts because of Bryant's bankruptcy and the automatic stay required thereto.

Respondents filings with the Superior Court became the primary vehicle for their fraud. Thus, all of the "service-by-mail" which are recorded by the innumerable "proofs-of-service " that Respondents have caused to be filed with the Court Clerk constitute sworn statements of mail fraud. in violation of 18 U.S.C § 1341

(b)      Respondent's filings and failure to perform also constitutes extortion via economic duress, including under the color of law and violation of 18 U.S.C. §894; and 18 U.S.C. § 1344.

170)      As a direct and proximate result of, and by reason of, the activities of the Respondents and their conduct in violation of 18 U.S.C. §§ 1962(d), Peter Clark has been injured in his businesses, person, and/or property within the meaning of 18 U.S.C. § 1964(c). Mr. Clark is, therefore, entitled to recover threefold the damages he has sustained together with the cost of the suit, including reasonable attorneys' and experts' fees and costs.


Respectively Submitted,


_____      October 2, 2010
Peter Clark, in pro per                                 Date


## VERIFICATION

I, Peter Clark, state that I have read the foregoing and know its contents. The same is true of my own knowledge, except as to those matters that are stated on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2nd day of October, 2010, in Pleasant Hill, California.


_____

Peter Clark

–46–
COMPLAINT